## WINTER et al. v. BOSTWICK et al.

(Circuit Court, W. D. Wisconsin. August 26, 1909.)

### No. 11.

1. MINES AND MINERALS (§ 53*)—CONTRACTS FOR SALE OF MINING PROPERTY—RIGHT TO CANCELLATION FOR FRAUD.

A contract giving an option to purchase mining property cannot be rescinded for fraud because of erroneous statements made by the sellers as to the quantity of ore on the property, or the title, where the purchasers were to take possession of and operate the property for several months before the option expired, and the statements were made in good faith and expressed the honest opinions of the sellers, who were not lawyers and had little knowledge of practical mining.

[Ed. Note.—For other cases, see Mines and Minerals, Dec. Dig. § 53.*]

2. MINES AND MINERALS (§ 53*)—OPTION TO PURCHASE MINING PROPERTY—RIGHT TO RESCIND CONTRACT—DEFECTIVE TITLE.

Where complainants by a contract with defendants and on making a cash payment were given an option to purchase mining property until a given date, they were not entitled to rescind the contract on the ground that the title to the property was unmarketable prior to the expiration of such time, and without offering to make the payments to complete the purchase.

[Ed. Note.—For other cases, see Mines and Minerals, Dec. Dig. § 53.*]

In Equity.

Young & Bell and William P. Belden, for complainants.
George G. Sutherland and Olin & Butler, for defendants.

SANBORN, District Judge. Final hearing on bill to rescind contract of sale of mining stock of the Baxter Mining Company filed December 30, 1907. It is alleged as follows: Before the contract was made, defendants were asked for the abstract of title to the mining property, and defendants stated they could not find it, but that they owned a lease of the property, made by the fee owners, that they knew all about the title, knew that it was perfect, had had it examined by attorneys who had pronounced it perfect and unincumbered, and they would warrant such title. Complainants believed and relied on these statements, and would not otherwise have made the contract without examining the title, there being no means at hand available for such

examination. The contract contains the following covenant by defendants:

"That the property to be transferred hereunder (certain corporate stock) is unincumbered, and that the title of said Baxter Mining Company to said leases is clear and unimpaired."

That, by said covenants and warranties, it was understood between the contracting parties, as the basis of the entire transaction, that the corporation had a clear and unimpaired title to the leases, and the absolute right to mine and remove the ore. That, while the contract purports to be an option on the stock, it was in fact understood to be a method by which the absolute and beneficial control of the leasehold should be transferred, and that the stock transfer was only incidental to securing such control, it being understood that, upon acceptance of the option, the existence of the Baxter Mining Company would be terminated, and a new corporation created. The bill also states with much particularity many representations made by James Bunt, defendants' mining superintendent, as to the depth, extent, and character of the ore in the mine. The contract price for the stock was $100,000, $10,000 of which was paid down. Complainants were given the option to purchase all said stock at any time prior to April 1, 1908, on paying the $10,000 down, $40,000 January 1, 1908, and $50,000 on or before April 1, 1908. They were to take possession of the mine, operate it, pay expenses and royalties, market the ore, deposit the net proceeds in escrow, and if they did not exercise the option, or forfeited their rights, the deposit was to be paid to defendants, otherwise to a corporation to be formed by complainants. They further agreed to lay out at least $10,000 in exploration and development, and might surrender their option on 10 days' written notice, forfeiting all sums paid or laid out under the contract, all net earnings, machinery, etc. Complainants took possession of the mining property, and operated it until the latter part of December, 1907, the net receipts being about $5,000, not being deposited, but used to pay expenses and royalties. They explored the mining property, but found that the representations as to the extent of the ore were materially false, and that a certain part of the property represented to be the most valuable part of the mine contained no merchantable ore at all. The representations are alleged to have been false and fraudulent, and relied on by complainants. It became necessary to make certain improvements on the property in order to properly carry on the contracted work, consisting of an addition to the mine office, a bunkhouse, boarding house, boiler plant, pumps, shafting, machinery, and repairs, and ponds for washing ore. The amount expended therefor, and in development, was $20,000.

It is further alleged that the title to the mine on examination proved unmerchantable, and that in the fall of 1907 a suit to quiet title to the property was commenced by Frank, Patrick, and Peter Whaley against the company, claiming three-tenths of the title, with damages for waste in taking out ore. On learning of the falsity of the representations as to title and quantity of ore, complainants attempted to procure a modification of the contract, but were unable to agree with

defendants thereon. Thereupon they brought this suit for the rescission of the contract on the ground of such fraudulent representations, praying for cancellation of the contract, an accounting and repayment of the moneys paid out for exploration, improvements, expenses, and royalties, for the first payment of $10,000, and for an equitable lien therefor on the property. About the time of filing the bill, and on December 31, 1907, complainants served on defendants a notice that they elected to rescind the contract, and had brought suit therefor by reason of the false and fraudulent representations inducing the contract as set forth in the bill, and demanding the return of the $10,000 and of some $23,000 expended in development and improvement; and offering to restore possession, subject to an equitable lien for such moneys. On January 10, 1908, defendants gave notice to complainants declaring their default in not paying the $40,000 due January 1, 1908, and that their rights were forfeited, and defendants thereupon resumed possession of the property. They answered denying all charges of fraudulent representations, and all the equity of the bill, and also filed a cross-bill asking an account of the ore sold by complainants, and for a decree that they have no right or lien in or to the property.

I find from the evidence taken in court, and from reading the depositions, that no fraudulent representations were made by defendants, either as to the quantity of ore or the title. The statements which Bunt may have made were without any authority from defendants. As to the title, defendants were not lawyers, and what they said was only their opinion. The whole record most clearly shows that the parties dealt with one another in the most fair and considerate way. Defendants never had the slightest intention to misrepresent or defraud, nor did they make reckless statements of fact not known to them to be true in order to induce the contract. They had little or no technical knowledge of mining. Complainants were simply taking an option, and were to find out for themselves whether the mine was valuable. The case shows no actionable fraud whatever. A considerable part of the argument proceeded upon the theory that complainants were entitled to a rescission for a breach of the contract in not furnishing a marketable title by reason of the claim made in the Whaley suit. As I construe the bill and notice of rescission, no claim is made on this ground. But even assuming that such a claim was actually made, and that the Whaleys owned an undivided three-tenths of the Baxter mine, I think that complainants had no right to rescind for that reason at the time they attempted to do so on the ground of fraud. They still had until April 1, 1908, to declare their option. Meanwhile the title might have become perfect. Defendants might have acquired the Whaley title by that date, and then have been in a position to assign the stock entirely unincumbered. Had they been unable to do so, a different question would arise, but they had until April 1, 1908, to perfect the title, assuming it to have been unmarketable. There would be no breach of the contract by defendants until this time arrived; hence complainants have no ground of rescission. Green v. Green, 9 Cow. (N. Y.) 47, 51; Bannister v. Read, 1 Gilman (Ill.) 99; Higgins v. Eagleton, 155 N. Y. 466, 473, 50 N. E. 287; Annis v. Burnham, 15 N. D. 577,

108 N. W. 549; Clements v. Loggins, 2 Ala. 514; Hanna v. Harper, 3 Smedes & M. (Miss.) 793, 803; Denman v. Mentz, 63 N. J. Eq. 613, 52 Atl. 1117.

The bill is dismissed, and the cross-bill sustained at complainants' costs.